# Thornton, by next friend, *v.* Sheffield & Birmingham R. R. Co.

*Bill in Equity against Railroad Company for Damages for Right of Way, and Injunction.*

1. *Railroad company; agreement for right of way; when time of essence of contract.*—Where one executes an instrument binding himself to convey a right of way to certain persons on condition that they shall commence the construction of a railroad within four months and complete it through certain counties within three years' time is of the essence of such agreement, and, upon failure to comply with these conditions, compensation may be recovered for such right of way.

2. *Liability of railroad company for right of way; estoppel.*—One who permits a railroad company, without interference, to construct its road over his land, is not thereby estopped to claim compensation for the right of way.

3. *Injunction; right of way; damages.*—A bill in equity seeking compensation from railroad company for right of way, will be made effective by injunction if necessary, until the damages are properly ascertained, or until the railroad company obtains the right of way in legal form.

4. *Interpretation of deeds; partly written and partly printed.*—It is a rule of interpretation of deeds, or other instruments partly printed and partly written, that the written portions are presumed to have commanded the stricter attention of parties; and in case of conflict the written prevails over the printed matter.

5. *Equity pleading; rule of practice.*—Rule 13 of chancery practice (Code of 1886, p. 812), prescribing a form to precede the interrogating part of a bill, has no application to bills containing no interrogating part.


APPEAL from Colbert Chancery Court.

Heard before Hon. THOMAS COBBS.

The facts appear in the opinion. The appellant, a married woman, by her next friend, filed a bill in chancery praying for compensation for the right of way and an injunction until compensation was paid. The 8th ground of demurrer set up

[Thornton, by next friend, v. Sheffield & Birmingham R. R. Co.]

that complainant was estopped from making claim for compensation.

SIMPSON & JONES, for appellant—on the question of estoppel—cited 1 Herman on Estoppel & Res. Jud., § 3; 10 Barr (Penna), 530; 3 Washburne on Real Prop., pp. 74, 80, 460, 461; 19 Ala. 430; 54 Wis. 136; 72 Maine, 95; 25 Iowa, 371; 73 Ala. 426–440; 1 Wood's R'y Law, 603; Waterman on Specific Per., § 467; 1 Story's Eq. Jur., §§ 776, 778a (12 Ed.); 24 Ala. 146; 70 Ala. 227; 4 N. J. Eq., 47; 40 Wis. 660; 2 Wood's R'y Law, 798, 804. The contract was merely an agreement to convey.

J. B. MOORE, contra, cited 19 Ala. 430; Herman on Estoppel, §§ 408, 409, 410; 1 Wash. on Real Prop. 544; 3 Kent's Com. 565. Time is not of the essence of the contract.—1 Smede & Marshall Ch. 376; 2 Parsons on Con. 172–3; 2 Story's Eq., §§ 776, 777; Waterman on Spec. Per., § 467; 2 Wharton on Con., § 258; Bishop on Con., § 752; 10 Ala. 776; 6 Hamlin, 169; 61 Maine, 140; Benj. on Sales, § 910.

STONE, C. J.—The appellee, railroad company, surveyed its route, and had partially constructed its road, beginning at Sheffield, in Colbert county, and extending southeastward towards Birmingham. When this bill was filed, the road was completed, equipped and in running order for a distance of forty or more miles, in Colbert and Franklin counties, running through the lands of the female complainant, after noticed. On the 8th day of October, 1881, Mrs. Thornton, then Mrs. Henry, together with her husband, entered into an agreement, partly printed and partly written, a proper interpretation of which is necessary to a decision of this cause. This agreement was signed without witnesses, but was, on the day of its date, acknowledged and certified in form required to convey a homestead, and also to convey lands owned by a married woman.—Code of 1886, §§ 1790, 1802, 1894, 2508. The instrument was duly recorded in the proper office. We insert a copy of the contract, italicising the written words so as to distinguish them from the printed matter. The contract is as follows:

"Know all men by these presents, That whereas, Eugene C. Gordon, of the State of Mississippi, and his associates, of the States of New York, Georgia, Alabama, Mississippi and

[Thornton, by next friend, v. Sheffield & Birmingham R. R. Co.]

Tennessee, propose to build a railroad from some point on the Alabama Great Southern Railroad, or from some point on the Memphis & Charleston Railroad into, or through the counties of Tuscaloosa, Walker, Winston, Marion, Franklin, Colbert, and Landerdale, State of Alabama. And whereas, the building of said railroad would, in our opinion, enhance the value of our farming and timbered lands, and the productions thereon: And whereas, the building and operating of said railroad would, in our opinion, become a convenience and advantage in various ways, to our property and our labor, in furnishing facilities for transportation and more rapid communication to and from the markets of the country; now for and in consideration of any or all of these benefits and advantages, which, in our opinion, would accrue to us from the building of said railroad, should the said Gordon and associates, within four months from this date, begin the work of surveying or locating, or building said railroad, and shall within three years from this date, so complete the said railroad, so as to have it in operation [to the] *through the counties above named* [county lines between ——— ——— and ——— counties.] *Now* in that event, in consideration of the said benefits and advantages likely to accrue to us and to our property, as hereinbefore referred to from the building of the proposed railroad; We, *Gus A. Henry* and *Ella W. Henry* his wife, of the county of ———, State of Alabama, do hereby agree and bind ourselves, our heirs, administrators, executors, and assigns, to make unto the said Eugene C. Gordon, and his associates, and upon the compliance of the said Gordon, and associates, with the terms of this contract [hereby vest the said Gordon and his associates, with good and sufficient title to all the coal, iron, coal oil in, or upon, or in any wise belonging to the following described lands or real estate, to-wit:] *We give the right for the said railroad to enter our plantation and go through the same in constructing the said road free of charge, provided it does not interfere with the buildings.*

[And in addition to the above described real estate, we hereby bind ourselves and legal representatives to make good and sufficient titles, in fee simple, to all the following described lands or real estate, to-wit: ——— ——————,
together with the right to enter upon the said lands to prospect for said mineral substances, and to mine and utilize the same if they so desire,] also we hereby grant unto the said Gordon and his associates, the right for road and railroads

[Thornton, by next friend, v. Sheffield & Birmingham R. R. Co.]

across our lands free of charge, and the free use of timber necessary for railroad or mining purposes.

It is expressly understood, that any and all of the above specified donations are to be made by the undersigned to aid the said Gordon, and his associates, in the construction of said railroad, in consideration of the benefits and advantages likely to accrue to us from the building of the same. It is further expressly and specially understood, that no such deed to the lands as above described [or to the coal, iron, coal oil and other mineral interests owned by us, as above specified,], is to be made, as described in this instrument, if the said Gordon and associates, should fail to build such portion of the road, and do the work as is required by the terms of this instrument; nor on the other hand, the said Gordon and his associates shall not be held liable for damages should they fail to build said railroad.

The object of thus deeding, or thus binding ourselves to deed certain lands, [and our coal, iron, coal oil, and other mineral interests] on certain conditions, to the said Gordon and his associates, is hereby expressly declared to be, to induce the said Gordon and his associates, to build the said railroad,—the consideration to the undersigned, being the supposed benefits to accrue to us from the increased circulation of money along the said R. R. line in building and operating the same, and the general benefits of our having increased railroad facilities, by which, in our opinion, we will be fully compensated for the said aid extended or to be extended by us in securing the same." Dated, and signed by Gus A. Henry and Ella W. Henry with their seals.

In framing this agreement a printed blank was used, which contained many words and stipulations not germane to the contract made, or intended to be made. We inclose in brackets such stipulations, sentences, phrases and parts of the same, as we think should not be considered in the interpretation of the agreement actually made.

It is a rule of interpretation of deeds or other instruments, partly printed and partly written, that the written portions are presumed to have commanded the stricter attention of the parties; and if there is an irreconcilable conflict between them, the writing prevails over the printed matter.—2 Dev. on Deeds, § 837; Bishop on Contr., § 413. This is but the teaching of human experience, crystalized into law.

We are satisfied that in this case there was no intention to contract for mineral rights, or for any easement or privilege

[Thornton, by next friend, v. Sheffield & Birmingham R. R. Co.]

in connection therewith. The sole purpose was to obtain a right of way through the plantation of the female complainant, free of charge, and, on like terms, "the free use of timber necessary for railroad purposes."

The contract is not free from ambiguity. It is earnestly contended for appellee, that time was not made of the essence of this contract. On the other hand, it is claimed for appellant, that the writing is only an agreement to convey, on conditions to be performed within a specified time; and the time having elapsed, and the conditions not being performed, the agreement to convey is cancelled. The contract does not employ either of the words grant, bargain, sell or convey, or any word of equivalent import. Considering the entire instrument, we hold it not a conveyance, but an agreement to convey, on conditions therein expressed.—*Chapman v. Glassell*, 13 Ala. 50. The conditions, most important to be noted, are the following: To commence the survey of the said road within four months of the date of the contract— October 8, 1881—and within three years to complete it, running "into or through the counties of Tuscaloosa, Walker, Winston, Marion, Franklin, Colbert and Lauderdale, State of Alabama." The clause which binds Henry and his wife— the latter now Mrs. Thornton—is in the following terms: "Now, in that event, . . . . we, Gus A. Henry and Ella W. Henry, his wife, do hereby agree and bind ourselves, our heirs, administrators, executors and assigns, to make unto the said Eugene C. Gordon and his associates, and upon the compliance of the said Gordon and his associates with the terms of this contract, hereby [agree to] vest the said Gordon and his associates with good and sufficient titles . . . . we give the right for the said railroad to enter our plantation & go through the same, in constructing said road, free of charge, provided it does not interfere with the buildings." There are other provisions in the contract clearly indicating that it was not intended as a conveyance, but only as an agreement to convey. Among them is the following: "It is further expressly and specially understood that no such deed to the lands as above described . . . is to be made, as described in this instrument, if the said Gordon and associates should fail to build such portion of the road, and do the work as required by the terms of this instrument." Under the force of the clauses copied, and other provisions of the contract, we feel authorized to insert

8

[Thornton, by next friend, v. Sheffield & Birmingham R. R. Co.]

the words "agree to," which we have placed between brackets above.

We hold that under the terms of this contract, the complainant bound herself to give and convey the right of way, only in the event Gordon and associates, or their assigns, performed the stipulations they entered into, and which constituted the consideration of complainant's agreement to convey.—*Tenn. & Coosa R. R. Co. v. East Ala. Railway Co.* 73 Ala. 426, 440. We hold further that the agreement in this case makes time an essential element of the contract, and Gordon and associates having broken the agreement on their part, have forfeited all right to claim its observance on the part of complainant.

It is contended for appellee that by permitting the railroad company to construct its road and operate it without interference, complainant has estopped herself from now asserting her right to compensation for the right of way. There is no principle of estoppel against this claim, considered as a mere demand for damages for the right of way. If she were seeking to evict the corporatioon, there might be something in the objection. That is not the purpose of this suit. She claims only for the injury done to her freehold; and that claim, under the averments of the bill, stand on the same meritorious ground as if the road had been built, without prior attempt to procure, or condemn the right of way. Such acquiescence, to operate a bar, must be of sufficient duration to toll entry.—*N. O. & Selma R. R. Co. & Ins. Asso. v. Jones*, 68 Ala. 48; *Jones v. N. O. & Selma R. R. Co.* 70 Ala. 227; *Tenn. & Coosa R. R. Co. v. East Ala. Railway Co.* 73 Ala. 426; 1 Wood's Railway Law, § 209; *Perkins v. Me. Cen. R. R. Co.* 72 Me. 95.

The course adopted by the complainant in this case is fully justified by the authorities, and the bill should be retained and made effective by injunction if necessary, until the damages are properly ascertained, or until the railroad company obtains the right of way in legal form—*Taylor v. C. R. & St. P. R. R. Co.* 25 Iowa 371; *Browning v. Cam. & W. R. R. Co.* 4 N. J. Eq. 47; *Gilman v. S. & F. R. R. Co.* 40 Wis. 653; *Rush. v. M. L. S. & W. Railway Co.* 54 Wis. 136; 2 Wood's Railway Law, § 246.

The present suit was instituted in July, 1887. At that time, and since February 28, 1887, "the wife must sue alone, at law, or in equity, . . . . for the recovery of her separate property, or for injuries to such property."—Act ap-

proved February 28, 1887, Sess. Acts 1880, § 7; Code of 1886, § 2347.

The chancellor erred in sustaining the 8th ground of demurrer, and there is nothing in the other grounds assigned. Rule of chancery practice, No. 13, in the Code of 1876, same number in Code of 1886, has no application to bills which contain no interrogating part, and, like the forms of the complaints given in the Code, is at most directory.—Code of 1886, § 3422.

The deree of the chancellor is reversed, and a decree here rendered overruling the demurrer. The decree appealed from being interlocutory, the cause is still pending in the court below, and there is no need of an order of remandment.

Reversed and rendered.

. CLOPTON, J., not sitting.