[Carrier v. Eastis.]

# Carrier v. Eastis.

*Action for Money Had and Received.*

1. *Assignment of executory's contract of purchase; defect of title as failure of consideration.*—Where a purchaser under an executory contract for the sale of land transfers or assigns to another his rights under said purchase, the assignment is governed by the same rules which apply to the sale of goods not in the possession of the seller; and the purchaser or assignee under the doctrine of *caveat emptor* buys at his own peril; and if he does not protect himself by warranty, he can not, in the absence of fraud, recover back the part of the purchase money which he has paid, on account of the defective title or failure of consideration.

2. *Same; same; facts of this case.*—In an action to recover back a part of the purchase money which had been paid by plaintiffs to defendant in consideration of an assignment of an executory contract for the sale of land, the following facts were disclosed: C. sold certain land to defendant with covenant to convey on payment of the purchase price. By contract with defendant, plaintiffs agreed to pay defendant a certain amount of such purchase, and to pay C. the balance due him from defendant, the contract providing that upon the payment of this amount, C. should convey the lot to plaintiffs in full satisfaction of his covenant to make such conveyance to defendant. *Held:* That the transaction was an assignment only of defendant's interest in the covenant of conveyance with C., the plaintiffs buying at their own peril, and upon the failure of title in C. the defendant is not liable to the plaintiff for the amount paid by him to the defendant under the contract.

3. *Same; contract as evidence.*—In an action to recover the amount paid upon an executory contract for the sale of land, which was in writing, the writing is the proper expression of the contract between the parties, and is admissible in evidence.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. JAMES J. BANKS.

This was an action for money had and received, brought by the appellants, William Carrier and Brooks Suden, against the appellee, James A. Eastis. The money sued for had been paid by the plaintiffs to the defendant upon an executory contract for the purchase of land. This contract, which was signed by the defendant and attested to by two witnesses, was

[Carrier v. Eastis.]

in the following words and figures : "Know all men by these presents : That for and in consideration of the sum of one hundred dollars in cash in hand paid Mr. J. A. Eastis by Wm. Carrier and Brooks Suden, and the further sum of two hundred dollars to be paid the said J. A. Eastis by the said Wm. Carrier and Brooks Suden, evidenced by four promissory notes bearing even date herewith, each for fifty dollars payable on the second Monday of each month, the first of said notes being due and payable October 8, 1888. Now when all of said notes are settled in full, and when the sum of two hundred dollars is paid R. J. Terry, agent for Daniel Coleman, and the rent on the lot of two dollars per month is paid, then said Terry is authorized and instructed to make a deed to lot number six (6) in block (1), in Green's Springs, Ala., as surveyed and laid off by George D. Stonestreet, said lot being fifty by two hundred (50x200) feet, and such conveyance to them to be in full satisfaction of the covenant of the said Daniel Coleman to such conveyance to me,—witness my hand and seal this the 11th of September, 1888." The plaintiffs objected to the introduction in evidence of this contract, on the grounds, 1st. That it was not shown that Terry had authority to sell the land ; and 2d, that the agency for Daniel Coleman was not shown to be in writing. The court overruled this objection, allowed the writing to be introduced in evidence, and to this ruling the plaintiffs duly excepted. The other facts of the case are sufficiently stated in the opinion.

Upon the introduction of all the evidence, the court gave the general affirmative charge for the defendant. To the giving of this charge the plaintiffs duly excepted. There were verdict and judgment for the defendant. The plaintiffs appeal, and assign as error the ruling of the court upon the evidence to which exceptions were reserved, and the giving of the general affirmative charge in favor of the defendant.

J. W. Chamblee, for appellant, cited *Flinn v. Barber*, 64 Ala. 193 ; *Baptiste v. Peters*, 51 Ala. 158 ; *Munroe v. Pritchett*, 16 Ala. 785 ; *Insurance Co. v. Tunstall*, 72 Ala. 142 ; *King v. Martin*, 67 Ala. 177.

F. E. WHITE and WILLIAM BETHEA, *contra*.—All the testimony in this case showed very clearly that both the

plaintiffs fully understood all the facts pertaining to and surrounding this case, and there was no fraud, either alleged or proven, and, there being no conflict in the evidence, the court did not err in giving the general charge for the defendant.—*S. & N. Ala. R. R. Co. v. Wood*, 71 Ala. 215; *Alexander v. Alexander*, 71 Ala. 295; *Mary Lee C., I. & R. R. Co. v. Chambliss*, 97 Ala. 171, and cases cited.

The money paid by plaintiffs was not recoverable in this action.—*Nelson v. Shelby Manf'g & Imp. Co.*, 96 Ala. 515, and cases cited.

HARALSON, J.—This suit was commenced by appellants against appellee, on a count for money had and received, on which issue was joined. The plaintiffs claimed that defendant sold them a lot of land on a credit for $500, and two dollars rent per month, until the whole purchase price was paid, at which time a deed of conveyance was to be executed to them; that they paid $385 of the purchase money, and ascertaining that the defendant could not make or cause his vendor to make title to the land, they abandoned possession, and making demand of defendant for said sum so paid by them, which he refused to. pay, instituted this suit.

. But the plaintiffs under the facts of the case have misapprehended their remedy, if they have any. The contract between plaintiffs and defendant was in writing and read in evidence against objections of the plaintiffs, which were groundless. The writing was the proper expression of the contract between them, on which the plaintiffs should have been willing to. stand. Although clumsily drawn, its meaning is unmistakable, especially when taken in connection with the other evidence.

It appears that one Daniel Coleman, owning the land in question and being in possession thereof, sold the same to the defendant, through R. J. Terry, his agent, and gave to the defendant a covenant to convey to him on payment of the purchase money. Until full payment had been made for the lot, it is fairly inferable, that defendant was also to pay said Coleman two dollars per month rent for the same. The contract bound the plaintiffs to pay the defendant the sum of $300, which it is admitted was fully paid by them, and it was also admitted that they had paid to Coleman, or his agent

Terry, the sum of $85. By the terms of the agreement, in addition to the $300 to be paid to defendant, plaintiffs were bound to pay R. J. Terry, agent for said Coleman, what defendant owed Coleman on his purchase of said lot from him, viz., the sum of $200, and the monthly rental of two dollars until the principal was paid. When all these payments, the $300 to defendant and the $200 to Coleman, and the monthly rental up to the time of making them,—were fully made, the contract provides, "then the said Terry is authorized and instructed to make a deed to lot [describing it], and such conveyance to them to be in full satisfaction of the covenant of the said Daniel Coleman to make such conveyance to me,— witness my hand and seal, this the 11th of September, 1888. [Signed] James A. Eastis," in presence of two witnesses.

The plaintiffs testified that they discovered in 1894, that the Tennessee Coal Iron & Railroad Company owned, and held the title to said lot superior to Cole- man's title,—and that fact was not denied; that they and Daniel Coleman thereupon surrendered possession of the lot to said company, and that they demanded from defendant all the money they had paid on their contract, and he refused to pay.

On this state of proof, which was without conflict, the court, at his request, gave the general charge for defen- dant. In this there was no error. It is not pretended that the defendant made any false representation as to the state of the title; he made no guarantee or war- ranty in reference thereto, nor did he agree, on the pay- ment by plaintiffs of the consideration of the contract, to execute to them a conveyance of any particular kind. On the other hand, he informed them in the contract itself, that his was a mere executory contract of purchase of the land from Coleman, and he held merely his agree- ment to convey, which agreement he sold and transferred to plaintiffs, thereby assigning to them what right and title he had under his agreement with Coleman, and no more.

In *Tobin v. Bell*, 61 Ala. 128, it was said by this court : "A vendor in possession, however defective may be his title, may sell, and may, by the contract of sale, fix the measure of his rights and responsibilities. Fraud, or mistake, not occurring, the contract is the law controlling

the rights of the parties, and it is not in the province of judicial tribunals to modify or change it, to avoid hardships which may result from it.'' The obligation of the vendor in that case was, not to execute a conveyance, but that when the purchase money was paid, he would divest himself in favor of his vendees of whatever equity he had in and to the land. The court added : ''Whether the vendees can thereby acquire title, is not material,— they can obtain all for which they contracted. If they had desired to obtain more, they should have contracted for a good title. The purchaser of lands, title to which rests in writing, can claim exhibition from his vendor of an unbroken chain of title, and protect himself against its defects by covenants of warranty. If he takes a warranty, he has no claim either at law or in equity against the vendor, if there is no fraud misrepresentation, or mistake, further than the warranty extends —it is his own fault and negligence that he did not require fuller covenants. And when without covenants or warranty he buys, though he is evicted subsequently, he is without remedy.''

And in *Griel v. Lomax*, 86 Ala. 132, a case similar to the one before us, the court holding that it was nothing more than the familiar case of an assignment of a contract to purchase land, said : ''The contract purports on its face to be nothing more than the transfer or assignment by Griel to Lomax and his associates of all the assignor's right, title and interest in a certain piece of real property, which one Moses had contracted to sell to said Griel, and two other named persons as his covendees. There are no words of warranty used, and no covenants of seizin or of future enjoyment is stipulated for in the contract of assignment. When this is the case, the rule is the same in the sale of an interest in land, as of goods where the vendor is out of possession. The doctrine of *caveat emptor* applies, and the buyer having neglected to protect himself by a warranty, in the absence of fraud, will be held by the court to have purchased at his peril.'' In such case the purchaser, or assignee, cannot defend an action for the purchase money, nor recover it back if paid, on account of a defect of title or failure of consideration. What rights the plaintiff may have, under their contract with defendant, as against Coleman, if any, we do not consider.—*Griel*

[Alabama Midland Railway Co. v. Parker.]

*v. Lomax,* 89 Ala. 424; *Franke v. Riggs,* 93 Ala. 254; *Tedder v. Steele,* 70 Ala.347; *Strong v. Waddell,* 56 Ala. 471.

Affirmed.